The next matter, number 23-2088, Jose Rodolfo Escobar Larin versus Merrick B. Garland. At this time, would counsel for the petitioner please introduce himself on the record to begin? Good morning, your honors. May you please the court? Sang-Yup Kim for petitioner. Chief Judge Barron, may I reserve one minute? You may. Thank you. There are many issues. Let me start with the asylum time bar issue. So here is context matters. So IG found petitioner mentally incompetent to press asylum without assistance of counsel. IG also found, based on his 2022 diagnosis of unspecified schizophrenia, that his new social group, which is Salvadorans with unspecified schizophrenia spectrum and other psychotic disorders who exhibit erotic behaviors, that's cognizable. Nevertheless, IG and BI found that that did not constitute change circumstance exception to the one-year asylum time bar. And when we read IG's decision, the only reason that IG and BI did so was because, at the time of his entry to the United States in 2004, he was eligible for asylum on a different ground. And that was the only reason. So I read the IG and BI decision as to the change circumstance exception only applies to the preexisting legal basis. And what do we do about the fact that even if we could read the IJ decision that way, the BIA decision doesn't, to me, it doesn't read the same. And it's sort of notable in the way it phrases it. It doesn't say we agree with the IJ. It says we don't see reason to disturb. I think it's something like we find no reason to disturb the IJ's decision. Or even better for the government, I think it's the BIJ's ruling or something like that. I think this confusion is because BI is the one paragraph mixed the extraordinary circumstance, and change circumstance altogether. But if the court looks at the conclusion of the BI decision, the BI calculated the reasonable period of time from 2007 to 2022. So what that meant, and then they cited both the regulation of the extraordinary circumstance and change circumstance. So it makes little sense to assume that BI actually considered that claim and addressed that claim properly. So that's a separate argument, if I'm understanding, if I'm following. One ground you're objecting is they had the mistaken view that if there was some other ground of eligibility that existed then, tough luck. A change in circumstance that gives you a new ground for eligibility can't be the basis for it. And I understand that you're saying that's legal error. And the IJ is read to have done that. But I take it what you're now saying to me is even if the BIA affirmed the IJ without embracing that rationale, it still failed to consider the special new diagnosis of schizophrenia. Is that the idea? Yes. Yeah, but then the issue there is was that presented to the BIA? Yes, as we explained. Yeah, but the explanation left me with some questions about how clearly it was presented to the BIA that the new diagnosis was meant to be an independent contention that that's the change condition, the new diagnosis. As opposed to, so is there something you can point me to where you make clear to the BIA that what's being argued to them is even though there was this long pattern of mental illness, put all that aside, the change condition is this is the first time we actually got a diagnosis? So we admit that before the BIA, the only argument the petitioner made was, quote, onset of medical conditions. And so he did not specify or include the magic phrase of 2022 diagnosis. However, in the first BIA brief, he mentioned diagnosis. He included that phrase into the BIA. But did he identify even then that put aside everything else, the change condition is I now have a diagnosis I never had before? I think we can fairly interpret the BIA brief. I don't think the way the exhaustion, the requirement that this court requires is not that easy. As long as there is a notice of substantive argument as to what the basis of the change circumstance was, then that should be sufficient. On this record, there were earlier references to schizophrenia in earlier medical records. So it seems to me if the idea is that this particular document is meant to stand out and itself represent a change condition compared to all other documents, somewhat incumbent on petitioner to apprise the adjudicating body that that's the case. Even assuming that, Your Honor, this court finds that that specific 2022 diagnosis was not exhaustive under the statute, I still think that we still think that the BIA failed to apply the correct standard. And that's because you're saying it applied the IJ standard? But even putting that issue aside, it just makes little sense how the BIA could say that the calculation of the reason of the period of time was between 2017 when he became 18 and 22 when he filed a solid application. Because that indicates, that credibly indicates that BIA did not even consider all this mental illness, onset of mental illness as the basis of the change circumstance exception. Otherwise, I just do not see how any adjudicator could look at the BIA's decision. For example, if the BIA said something like in 2014 and 2022 of eight years of the difference, then the court could look at the, interpret the BIA's decision as that they considered that mental illness as basis, but then insufficient to satisfy the standard on the change circumstance exception. So I think it's between 2017 when he became 18 and 2022 when he filed his solid application. Does that argument depend, though, on what was just previously discussed between you and the Chief Judge, that he did raise before the BIA the 2013-2014 time period? I don't think it depends on that argument, because even assuming that the BIA did not adopt the precise, the angle of the review that IJ did, I think what's clear is at a minimum the onset of the medical conditions constituted a change circumstance. That argument was preserved, even though, even if the court finds the 2022 diagnosis was not exhausted. Then the BIA then had a duty to address whether that claim, the onset of medical conditions based change circumstance was sufficient to satisfy the standard of the change circumstance exception. But the BIA did none. So just let me understand this version of the argument, just in simple terms. When does the change occur on this account? With respect to the onset of the medical condition, it could be 2014, between 2014 and 2022. There's no one point that. But I'm saying it's some point between 2014 and 2022? Certainly are. And the problem you're saying is that the BIA, by looking at it from 2017 to 2022. I'm sorry, 27. 2007 to 2022. But why isn't it inclusive of that? They seem to say there's no change during that whole period. I don't think that's how the court should read the BIA decision, because each argument that BIA is making, BIA actually cites the regulation, and all the points about 2014, the medical conditions, BIA cited the extraordinary circumstance regulation. So I read the BIA decision again and again. I just do not see how the court can read the BIA decision in a way that they consider 2014 medical conditions as a basis for change circumstance exception. So what do you think it's doing in that passage when it's talking about the medical conditions as it is? It's talking about them only in the context of extraordinary circumstances? Yes, Your Honor. And then on your view, what is the BIA saying with respect to change circumstances? I think BIA, my interpretation, our interpretation is BIA just endorsed the IJ's view. Where would you point to the BIA doing that? Because the BIA's conclusion, which where they cited extraordinary regulation and change circumstance regulation, both of them, again, they calculated only the reasonable period of time between 2007 and 2022. That's exactly what the IJ did in the change circumstance exception. IJ said because he had been eligible for asylum at the time of entry, the only change circumstance was when he became 18 in 2007. And then that was not, so they concluded, the IJ concluded as end of that inquiry. And they moved on to the extraordinary circumstance. And the BIA's reasoning is not different. So our reading of the BIA's decision of that paragraph, the conclusion where they cited the specific regulation, that the BIA made the same mistake that IJ did. And I do not think the BIA made an independent assessment as to, for the question of the change circumstance exception. Just so I'm following on this part with respect to the change circumstance exception, I just want to point out that the I have thought the BIA had made an assessment of the timeliness of him responding to the mental health conditions or apprising anyone of that as a ground. Am I wrong about that? I'm looking at the BIA's decision of that paragraph. Where are you in the appendix? 11 of the record and page 2, the paragraph where the BIA talks about the extraordinary circumstance change circumstance. So the BIA cited, when BIA talked about the legal disability, so BIA starts with the first thesis sentence that the petitioner did not make either wrong. And then BIA started with extraordinary circumstance. The regulation that the BIA cited in the second sentence is extraordinary circumstance. And BIA further explains about that of the medical conditions. And then BIA makes a conclusion that we will not disturb the IJ's finding that his asylum application over 14 years after attaining the age of majority was unreasonable considering all relevant facts. And then they cited both regulations of extraordinary circumstance and change circumstance. So our reading of the BIA decision does not reflect that BIA considered what happened after he petitioned to become 18, which was 2007. And that's precisely consistent with what the IJ did. So even giving some benefit of the doubt to the BIA, I just do not see how this paragraph analysis is different from the IJ's analysis. And the key thing there is because it says the immigration judge appropriately evaluated the reasonableness of the delay from 2007? Yes, over 18 years. When he turned 18 years old? Yes. Over the 14 years, that's the last sentence of the conclusion. Over the 14 years means between 2007 and 8 and 2022. And you say that he sufficiently raised before the BIA that he was making a change circumstance argument with respect to roughly the 2014 period? Yes. He didn't say 2014, but he said, quote, onset of medical conditions. So I believe the discourse should find that that argument is exhaustive. But even if the discourse does not find that the IJ. How is this last sentence, this is the one I'm tripped up on, I want your view of it. First sentence of the paragraph says that we're not going to disturb the, the response must show both change circumstances and extraordinary circumstances. And then the last sentence is we will not disturb the immigration judge's finding that the response filing his application over 14 years after attaining the age of majority was unreasonable. And then they say considering all relevant facts. And I guess it cites IJ at 14. Is that page of the IJ's decision referring to the period of time over which he's had claims of mental disability? Or is that referring to the eligibility based on the grandmother? That goes into the page 14 is about the extraordinary circumstance, the conclusion of the extraordinary circumstance. However, I'm just, I'm just reading. The extraordinary circumstances meaning the mental health issues. Yes. So that's why I guess I'm having trouble seeing, but you just said we just can't tell whether it addressed it. At a minimum, we can't tell whether the BIA addressed this argument or not. So I think in order for, so basically the BIA knew the IJ's decision analysis. And for this court to assume that BIA did something independent. You'd have to have it be clearer than it is. There has to be some clear indication that the BIA did. And then last point, if you're right about this, and we get past the timeliness issue, then what? Then I think this court has two ways to adjudicate this case. Either I'm confident, I shouldn't say confident, but I'm optimistic that this court would grant a petition for the second petition for review of the motion to reopen denial. So either this court can do so on the merits of the asylum, humanitarian asylum, withholding, and other conditions. But even putting that issue aside, I think this court can also do so based on the current existing record of the case. And I see that my time is already up. Yes, but would you mind telling me, on your view, is there a distinction between reasonable possibility of persecution for humanitarian asylum purposes and well-founded fear? And if there's a distinction, which burden is higher, which one is lower? I think the level of, I think it should be the same. Because the expectation that the humanitarian asylum expects, it should be the same as the asylum standard. Which means the future persecution should be equal to the humanitarian asylum. The only difference is that there's no nexus requirement of the humanitarian asylum serious other aspect. But in contrast, the asylum has the nexus requirement. And do we then have to address the jurisdictional issue, the separate jurisdictional issue about what's reviewable? I don't think the court needs to address that issue. If the court agrees with us that the IH and BI fail to either fail to interpret the law correctly, fail to comply with the BI's own Because it's a pure legal question. So I think this court can avoid the mixed question of law and fact. And are you making a mixed question of law and fact argument also, though? We are also making that argument. Just so I understand how we could avoid it. Oh, I see. Because if we find for you on the standard, then we don't know how they would apply the standard again. There's no reason to address the mixed fact law question under that standard until they do it. Yes. Got it. Okay. Any further questions, I'll save other arguments for the rebuttal time. Thank you. Thank you, counsel. At this point, would counsel for the respondent please introduce herself on the record to begin? Hello, my name is Linda Do and I represent the respondent, the United States Attorney General. Here, the court is without jurisdiction to review the agency's pretermission of asylum on timeliness grounds because petitioner has not set forth a colorable constitutional claim or legal question. What about the claim we just were talking about for a long time? Your honors, petitioner's claim is unexhausted. What about not the 2022 one, but the argument they're making about the onset in 2014? Yes, your honors. As the board held, petitioner did not show that he had filed his asylum application within a reasonable period of time of his treatment in 2014 for a mental health condition or within a reasonable time when he became 18 years of age, which was in 2008. Where do you see them addressing the 2014 point? AR3, your honors. The board's decision on AR3. The immigration judge presumably determined that petitioner has not shown a public... I think it's IJ's decision at 26... The court finds the respondent received medical treatment for his mental health condition in 2014. The court finds the respondent he did not file an asylum application until April 22, 2022. Therefore, he did not establish that he filed it within a reasonable period of time. Is that what the IJ said? Yes, AR89. And then you're saying the BIA affirmed that part of its ruling? Yes, your honors. Because the board held that petitioner did not show that he filed it within a reasonable time of the asserted changed or extraordinary circumstances. But see, I'm having trouble seeing where in the BIA's decision it's affirming the assessment regarding 2014 as the starting point. Because when I look at the paragraph where the BIA is affirming the IJ, it never gives a starting point as 2014 as a relevant date to be looking at and assessing anything. AR3, a medical record supports the immigration determination that petitioner was first diagnosed with a mental health condition in 2014. Yes, that's in the fact section of it, right? No, that's also the BIA's decision at 3. In the fact section of the BIA's decision. In its assessment of the changed circumstances, there's only one paragraph, I think, that's assessing, that's giving the BIA's legal analysis of why he loses on changed circumstances. Isn't that right? But the board said asserted, changed and or extraordinary circumstances. Yes, that's the only paragraph in the BIA's decision that's assessing the changed circumstances argument, correct? Well, yes, your honors. And in that paragraph, I don't see any analysis that thinks 2014 is a relevant date to be evaluating anything, which makes me wonder how we can say we're clear that the BIA grappled with this argument in affirming the IJ. And petitioner's appeal to the board, petitioner acknowledged that he was first seen for a mental health condition in 2014. He did not contend that the agency failed to consider the 2022 diagnosis. I know that. I'm talking about the 2014 point. So now you're saying it was preserved for the BIA, the 2014 point. And then I'm asking where does it show that the BIA engaged with that argument? To the extent that the board held that petitioner did not file within a reasonable period of time of the asserted changed and extraordinary circumstances. That sentence, where is that sentence? The only thing I see is we will not disturb the immigration judge's finding that the respondents filing this asylum application over 14 years after attaining the age of majority was unreasonable considering all relevant facts. I don't know whether when it cites the IJ at 14, it's citing to the IJ at that point. But then it's citing the extraordinary circumstances regulation, I think. Not the changed circumstances. So our question is before we can affirm the BIA on the ruling, we'd like to know the BIA made it. Well, Your Honor, the board goes into further to note that petitioner was able to work for and provide for his family for a number of years. And that all seems very relevant to the extraordinary circumstances argument. I'm so sorry. Oh, yeah, sorry, the very first sentence of the paragraph, the respondent must show that he filed his application with a reasonable period given the asserted changed and extraordinary circumstances. So that's the burden that petitioner must show and he didn't show it in regards to either. But then it gives reasons for why it didn't show it. And none of those reasons seem to key in on 2014. So how do I know that the reason the BIA thought he failed is because even though we considered the 2014 point he's making, we're rejecting it? Because petitioner argued 2014 in his appeal brief and the board is saying from 2014 where he was seen by mental health, you know, was seen at the emergency room. Additionally, the board assesses it from 2014 and to the circumstances thereafter, showing that he was sufficiently competent where he was able to support his family. He held a job for three to four years. Accordingly, he didn't show that was a reasonable period of time from those circumstances. I see. A medical record supports the implications that the respondent was first diagnosed on 2014. I got it. Okay. Accordingly, petitioner's claim is simply a factual dispute. It's not, as petitioner argued, a question of law to undisputed facts. Here, the facts are in dispute. Petitioner claims that he was first diagnosed with schizophrenia in 2022, and the record clearly shows that as of 2014, the medical records indicate that he had a history of schizophrenia as of 2014. Accordingly, he has not raised a constitutional claim or legal question with regards to the agency's denial of asylum on timeliness grounds. Additionally, so moving forward, petitioner acknowledged that the timeliness of his asylum application precludes him from humanitarian asylum. In petitioner's opening brief, he indicated that humanitarian asylum is available to those with no timeliness issue. Accordingly, the court can dismiss the petition for review on this regard. Moving forward, substantial evidence supports the agency's denial of withholding of removal, because petitioner has not shown that there is a clear probability of future persecution on account of his protected ground, which he defined as Salvadorians with unspecified schizophrenia spectrum and other psychotic disorders who exhibit erratic behavior. Here, the agency looked at the various potential risk of harm by the various persons that petitioner feared. The agency acknowledged that the evidence revealed that Salvadorian society stigmatizes those with mental disabilities as being locos. However, this court has held that a general climate of discrimination does not constitute persecution. The agency further found that the record did reveal that persons with mental disabilities are subject to neglect, abuse, lack of resources, and are periodically targeted and killed. While the agency did not specifically delineate each source of harm, the record evidence that it cited shows that the sources include government officials, mental health care workers, and institutions, as well as gangs. In short, reading the entirety of the agency's decision, and the evidence presented, it is clear that the group purposely targeting and killing such persons would be gangs. The Supreme Court has held that the agency's action may be upheld where its reason is of less than ideal clarity, where its path may reasonably be discerned. And to the extent that persons with disabilities are periodically targeted and killed, the court has recognized that intermittent instances does not suffice to show a clear probability of future persecution. Finally, while the court has recognized that persecution is an extreme concept, that does not include all treatment that the society regards as unfair, unjust, or unconstitutional, the petitioner has not shown that the abuse and lack of resources or neglect that he fears is persecution on account of a protected ground. To the extent that the petitioner claims that the agency did not consider the state of emergency, again, the claim is unexhausted. The petitioner had solely raised it in the context of humanitarian asylum and cat protection, which do not require an access to a protected ground. And finally, substantial evidence supports the agency's denial of cat protection because the petitioner did not demonstrate that there is a clear probability of torture by government officials, gangs, or mental health care workers and institutions. Here, the agency applied a holistic approach and found that, and considered all relevant evidence, that there is a clear probability of torture by government officials, gangs, or mental health care workers and institutions. The agency found that the petitioner did not show a particular risk of torture and that his claim was based on a series of suppositions, which did not lend to a clear probability that he would be tortured. If we disagree with you on the timeliness of his request for humanitarian asylum, just on the timeliness point, do you have a position on the merits of that claim, not whether it should be granted, but whether he is otherwise statutory? Or is this question that I'm asking premature? If we disagree with you on the timeliness question. Moving forward, the agency found that the petitioner did not establish a particular risk of torture by the state of emergency, which was an initiative aimed at gangs, and that the pattern of human rights abuses did not suffice to show that he was tortured. And while Dr. Montrose opined that the petitioner's return could lead to a high risk of developing a number of psychological symptoms, which could increase his contact with officials, the record was unclear as to what would happen thereafter. Finally, while gangs have perpetrated killings of persons with disabilities, the record did not evidence... I want to just go back to this premature point, just so I understand. If we thought that the BIA decision failed to engage with the 2014-based argument for change conditions, because we just couldn't tell whether it did or didn't, given the way the BIA wrote it, I'm not saying that's what we're going to do, I'm just saying if we thought that, what would then happen? We'd vacate and remand for them to do the change conditions analysis that we'd be saying they hadn't done, and so we really wouldn't address anything else at that point, right, until that was done. That's correct, Your Honors. We would have no reason to get to the merits until they've assessed on their own whether there was a change condition such that it was timely, is that right? Yes, Your Honors. I understand. And the petitioner did not show it was within a reasonable period of time, given those circumstances. Finally, in the Board's decision, having assessed all the various factors in support of the petitioner's claim, it determined that overall it concluded that the IJ did not commit legal or clear factual error in finding that the petitioner did not establish a likelihood of torture, prior with the acquiescence of the government, indicating that the Board had considered the petitioner's claim in total, altogether and as a whole. In light of the foregoing, the petitioner has not shown that a conclusion contrary to the agency's denial is compelled and requests that the Court dismiss in part and deny the remainder of the petition for review. Thank you. Thank you, Counsel. At this time, Counsel, for the petitioner, please reintroduce yourself on the record. You have a one-minute rebuttal. May it please the Court, Sang-Yeop Kim for petitioner. Your Honor, I just want to be very clear about what the BIA did. So the regulation ACFR 1208.4A4 is change circumstance, and A5 is extraordinary circumstance. The BIA's paragraph begins with conclusion, with citation of both regulations. And then BIA moved on to extraordinary circumstance by citing A5. And then does the assessment just like how IJ did. Once they're done, they begin with, we will not disturb that sentence, make a conclusion that he's filing this application over 14 years after attaining the OJH of a remote age. The majority was unreasonable considering all relevant facts, and they cite A5 and A4. So this is exactly how the IJ did. Now, if there's some doubt that this Court is unclear as to what the BIA did, then that's also another ground for vacature. And if that's what we did, we wouldn't do anything else. Because until that gets resolved by the BIA, we don't know whether we have jurisdiction to do anything. And so just so I track it, the fact that they cite A5 and A4 in the penultimate sentence of that paragraph, you say in light of everything that came in between, leaves it at least ambiguous whether the reference to the 2014 document is being referred to only in the context of extraordinary circumstances. That's correct. And therefore ambiguous as to whether what they were doing in that with respect to the changed circumstances is just adopting the IJ's theory. That's correct. Which you say was legal error. That's correct. Because objectively So I guess we'd have to, in order to vacate on the ground that we can't tell what the BIA was doing, we'd have to at least agree with you that the IJ's theory was legally incorrect. Yes, Your Honor. Because otherwise it would be, at a minimum you're agreeing it adopted the IJ's view, which unless that's legally incorrect, there's no reason to vacate. That's correct. Unless Your Honor has any further questions, we ask the Court to grant the petition. Thank you.